UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:16-cr-00138-JAW |
| | ) | |
| JOHN OLIVEIRA | ) | |

**ORDER ON SENTENCING**

A criminal defendant pleaded guilty to distributing fentanyl. Before sentencing, the Court must decide whether the defendant's criminal history makes him subject to an enhanced guideline calculation as a career offender under U.S.S.G. § 4B1.1. The Court determines that the defendant is not a career offender because his prior drug trafficking conviction under Maine law does not qualify as a career offender predicate because the conviction is not a "controlled substance offense" as defined by the guidelines.

I. **FACTUAL AND LEGAL BACKGROUND**

On October 13, 2016, a grand jury indicted John Oliveira on two counts of distributing fentanyl in violation of 21 U.S.C. § 841(a)(1). *Indictment* (ECF No. 1). On April 18, 2017, Mr. Oliveira pleaded guilty to both counts. *Min. Entry for Change of Plea Hearing* (ECF No. 25). On September 27, 2017, the Court held a presentence conference at which the Court and the parties discussed whether Mr. Oliveira is subject to an enhanced guideline calculation as a career offender pursuant to U.S.S.G. § 4B1.1. *Min. Entry for Presentence Conference* (ECF No. 32).

On October 17, 2017, the Government filed a sentencing memorandum. *Gov't's Mem. in Aid of Sentencing* (ECF No. 33) (*Gov't's Mem.*). On November 8, 2017, the Defendant filed his sentencing memorandum. *Mr. Oliveria's Mem. in Aid of Sentencing* (ECF No. 35) (*Def.'s Mem.*). On November 14, 2017, the Government filed a reply memorandum. *Gov't's Reply to the Def.'s Mem. in Aid of Sentencing* (ECF No. 36) (*Gov't's Reply*).

Generally, the consequences of applying the career offender guideline are two-fold. First, a career offender's criminal history category is automatically adjusted to Category VI. U.S.S.G. § 4B1.1(b). Additionally, a defendant's offense level is adjusted based on the offense statutory maximum term of imprisonment. *Id.* These adjustments to the criminal history category and offense level, in turn, affect a defendant's guideline imprisonment range.

If Mr. Oliveira does not qualify as a career offender, his criminal history would be IV, his base offense level would be 24, and his total offense level would be 21, after subtracting three-levels for acceptance of responsibility. *Revised Presentence Investigation Report* ¶ 18, 27-29, 36 (*PSR*). He would face a guideline sentence range of 57 to 71 months. *Def.'s Mem.* at 2. If the career offender enhancement applies, Mr. Oliveira's criminal history increases from Category IV to Category VI. *Id.* Because the statutory maximum term of imprisonment for a violation of 21 U.S.C. § 841(a)(1) is twenty years, *see* 21 U.S.C. § 841(b)(1)(C), Mr. Oliveira's base offense level would increase from 24 to 32; meaning that his total offense level would increase from 21 to 29, after taking into account the three-level downward adjustments for acceptance of

responsibility. *See* U.S.S.G. § 4B1.1(b)(3); *PSR* ¶ 27-28, *Def.'s Mem.* at 2. In summary, if the career offender enhancement applies, Mr. Oliveira's guideline imprisonment range would increase from 57 to 71 months to 151 to 188 months.[1]

Under the Guidelines, a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

There is no dispute that Mr. Oliveira's offense of conviction is a felony that is a "controlled substance offense," or that he was at least eighteen years old at the time he committed the instant offense. The only issue is whether Mr. Oliveira has at least two prior felony convictions qualifying as either a "crime of violence" or a "controlled substance offense." *See Def.'s Mem.* at 2 (objecting "to the use of the robbery or aggravated assault and the unlawful trafficking convictions as predicates for a finding that he is a career offender").

The Guidelines define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

---

[1] This range is based upon certain quantity findings in the PSR which Mr. Oliveira disputes. *Def.'s Mem.* at 2 n.2. At the presentence conference, the Court indicated that it would address the drug quantity issue after resolving the career offender question. For now, the Court describes the effect of the career offender determination on Mr. Oliveira's guideline range based on the PSR quantity findings.

3

U.S.S.G. § 4B1.2(b). For purposes of Mr. Oliveira's case, it is critical to this definition that a defendant, who has been convicted of illegal possession of a controlled substance, do so "with intent . . . to distribute."

The Government has submitted evidence of three prior convictions that might serve as career offender predicates. On March 22, 2006, a Maine court convicted Mr. Oliveira of robbery under 17-A M.R.S. § 651(1)(E). *Sentencing Ex.* 5. The same day, the Maine court also convicted Mr. Oliveira of aggravated assault under § 208(1)(B). *Sentencing Ex.* 7. On June 3, 2008, the Maine court convicted Mr. Oliveira of trafficking in cocaine under § 1103(1-A)(A). *Sentencing Ex.* 2. The robbery and aggravated assault convictions are not at issue in this order.[2]

## II. THE PARTIES' POSITIONS

### A. The Government's Memorandum

The Government argues that Mr. Oliveira's conviction for trafficking in cocaine qualifies as a controlled substance offense. *Gov't's Mem.* at 3-6. The Government contends that, because Mr. Oliveira's conduct did not involve heroin or fentanyl, he could only have been convicted under the definitions of "traffick" in 17-A M.R.S. §

---

[2] For a defendant's prior convictions to count as the two career offender predicates, they must not qualify as a single offense under the Guidelines. U.S.S.G. § 4B1.2(c). Prior convictions count as a single offense when there was no intervening arrest between them and when they "resulted from offenses contained in the same charging instrument" or "the sentences were imposed on the same day." *Id.* § 4A1.2(2). The Government concedes that Mr. Oliveira's convictions for robbery and aggravated assault count as a single offense under the Guidelines, since they were committed on the same day, with no intervening arrest. *Gov't's Mem.* at 2 n.3. In order for the career offender enhancement to apply to Mr. Oliveira, therefore, the drug trafficking conviction must qualify as a predicate, as well as either the robbery or the aggravated assault. The robbery and the aggravated assault cannot serve as the two career offender predicates by themselves. Since the Court has determined that Mr. Oliveira's cocaine trafficking conviction cannot serve as a predicate offense, it need not analyze the robbery and aggravated assault convictions.

4

1101(17)(A)-(D).³ *Id*. at 4. The Government reasons that the terms in those sections are synonymous with the guideline terms of "manufacture, import, export, distribution, or dispensing" or possession with intent to do any of those actions. *Id.* at 3-4 (citing *United States v. Odom*, 671 F. Supp.2d 163, 165 n. 2 (D. Me. 2009); *United States v. Bryant*, 571 F.3d 147, 157 (1st Cir. 2009)).

The Government seeks to distinguish *United States v. Mulkern*, 854 F.3d 87 (1st Cir. 2017), in which the First Circuit Court of Appeals "held that the defendant's drug trafficking conviction under 17-A M.R.S.A. § 1103 was not a 'serious drug offense' under the Armed Career Criminal Act" (ACCA) because that Maine law does not require the State to prove an intent to distribute when a defendant possesses two grams or more of heroin.⁴ *Gov't's Mem*. at 5. The Government contends that *Mulkern* does not control here because the definition of trafficking for drugs other than heroin

---

³  As used in Maine criminal statutes, unless the context clearly requires otherwise, "traffick" means:
  A. To make, create, manufacture;
  B. To grow or cultivate, except for marijuana;
  C. To sell, barter, trade, exchange or otherwise furnish for consideration;
  D. To possess with the intent to do any act mentioned in paragraph C;
  E. To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin; or
  F. To possess 2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder.
17-A M.R.S. § 1101(17).

⁴  *Mulkern* was an ACCA case. *Mulkern*, 854 F.3d at 94. The First Circuit has held that "the terms 'crime of violence' under the career offender guideline and 'violent felony' under the ACCA are nearly identical in meaning, so that decisions construing one inform the construction of the other." *United States v. Willings*, 588 F.3d 56, 58 n.2 (1st Cir. 2009). The First Circuit has not made such a clear pronouncement on the similarity of the drug offense components of the ACCA and career offender guideline, but this at least suggests that cases addressing the ACCA term may also be useful for interpreting the guideline term.

  Also, neither party asserted that the United States Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017), which distinguished between the ACCA and the career offender guideline for constitutional purposes, has a bearing on the interpretive principle that, to the extent the ACCA and the career offender guideline contain similar language, interpretations of one may be helpful in making interpretations of the other.

5

or fentanyl does require intent to distribute when defendants merely possess controlled substances. *Id.* at 5-6. The Government suggests that § 1103(3)(B) does not change this analysis, even though it "gives rise to a permissible inference under the Maine Rules of Evidence, Rule 303 that the person is unlawfully trafficking in scheduled drugs" if he or she possesses "[f]ourteen grams or more of cocaine or 4 grams or more of cocaine in the form of cocaine base." *Id.* The Government urges that the analysis "focuses on the elements of an offense, not on what inferences jurors can make under the rules of evidence." *Id.* (citing *Magasouba v. Mukasey*, 543 F.3d 13, 14 (1st Cir. 2008); *Villanueva v. Holder*, 784 F.3d 51, 54 (1st Cir. 2015)).

### B.  John Oliveira's Memorandum

Mr. Oliveira responds that *Mulkern* "instructs the sentencing Court to look carefully at the dividing line between possession and trafficking" when a case depends on the presence of "distributive intent." *Def.'s Mem.* at 15 (quoting this Court's decision in *United States v. Childers*, No. 1:16-CR-00079-JAW, 2017 WL 2559858, at *1 n.1, 2017 U.S. Dist. LEXIS 90334, at *1 n.1 (D. Me. June 13, 2017)). Mr. Oliveira argues that possession with intent to do the acts in 17-A M.R.S. §1101 (C), including "selling, bartering, trading, etc." do not necessarily involve "distributive intent" as *Mulkern* requires. *Def.'s Mem.* at 16. Mr. Oliveira also argues that Maine law "criminalizes possession with no intent to manufacture or distribute" because 17-A M.R.S. § 1103(3)(B) creates an inference or presumption that an individual is trafficking based on possession of fourteen grams or more of cocaine. *Id.* at 15-16. Mr. Oliveira contends that *Mulkern*'s citation of *United States v. James*, 430 F.3d 1150, 1152-56 (11th Cir. 2005) suggests that the quantity at which possession can

6

give rise to an inference of distributive intent for federal purposes is much higher than fourteen grams. *Def.'s Mem.* at 16-17.

### C. The Government's Reply

First, the Government replies that all of the acts in § 1101(17)(C) involve distribution and, therefore, a violation of § 1101(17)(C) must be a controlled substance offense under the guidelines. *Gov't's Reply* at 4. Second, the Government submits that "[t]he modified categorical approach focuses on the elements of the crime," which means that inferences under the Maine Rules of Evidence do not change the inquiry. *Id.* at 4-5 (citing *United States v. Mathis*, 136 S. Ct. 2243, 2251 (2016); *United States v. Huggins*, 465 Fed. Appx. 800, 804 (10th Cir. 2012) (unpublished); *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013)). The Government asserts that it does not matter that the *Shepard* documents do not establish the quantity of drugs involved because "the only ways of committing trafficking under 17-A M.R.S.A. §§ 1101(17)(A)-(D) involve[] the intent to distribute." *Id.* at 5.

## III. DISCUSSION

### A. The Categorical and Modified Categorical Approaches

When determining whether a prior conviction under state law qualifies as a career offender predicate under U.S.S.G. §4B1.1, courts have developed two approaches: the categorical approach and the modified categorical approach. *See Mulkern*, 854 F.3d at 90.

When the state statute is indivisible, meaning there is only one way to commit the crime, the court uses the categorical approach, which assumes the state statute of conviction "rested upon [nothing] more than th[e] least of the acts criminalized."

7

*Id.* (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)) (internal quotations omitted). The court then compares the state statute of conviction's elements to the pertinent definitions under the federal law. *Id.* If there is a match, the state conviction is a predicate. *Id.*

However, when the state statute is divisible, meaning that it lays out elements in the alternative and thereby defines multiple crimes, courts employ the modified categorical approach. *Id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)). Under that method, "the court looks beyond the statute of conviction to a narrow 'class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)'—known as *Shepard* documents—'to determine what crime, with what elements, the defendant was convicted of.'" *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The court can then compare that version of the crime, as the categorical approach commands, with the pertinent definition under federal law, to see if the state conviction is eligible. *Id.*

### B. The Teaching of *United States v. Mulkern*

In *Mulkern*, the First Circuit addressed whether a conviction under 17-A M.R.S. § 1103(1-A) for unlawful trafficking in heroin qualified as a predicate offense under the ACCA. 854 F.3d at 89-90, 94. The *Mulkern* Court observed that the statute to which he pleaded guilty, defined "traffick" to mean "[t]o possess 2 grams or more of heroin." *Id.* at 94 (citing 17-A M.R.S. § 1101(17)).

Significantly, in *Mulkern*, the First Circuit noted a distinction under the ACCA between the statutory definition of "violent felony", which requires that the felony "has as an ***element*** the use, attempted use, or threatened use of physical force," *id.*

8

at 95 (quoting 18 U.S.C. § 924(e)(2)(B)(i) (emphasis in *Mulkern*)), and the statutory definition of "serious drug offense", which is defined as "***involving*** . . . possess[ion] with intent to . . . distribute." *Id.* The *Mulkern* Court observed that "the word 'involv[es]' . . . 'mean[s] something other than'—indeed, something 'broader than'— 'has as an element.'" *Id.* at 95-96 (quoting *United States v. McKenney*, 450 F.3d 39, 43 (1st Cir. 2006)).

Next, the First Circuit rejected the Government's argument that the state of Maine's description of an offense as trafficking pursuant to 17-A M.R.S. § 1103(1-A) should control. *Id.* at 96. The *Mulkern* Court viewed that argument as contrary to the United States Supreme Court ruling in *Taylor v. United States*, 495 U.S. 575 (1990). *Mulkern*, 450 F.3d at 96. To allow the multiplicity of state laws to define terms in federal criminal law would lead to "inconsistencies in punishment." *Id.*

The *Mulkern* Court turned to the impact of Mr. Mulkern's guilty plea to trafficking in heroin, a crime that under Maine law is established by a two gram threshold. *Id.* Even though the First Circuit agreed with the concept that "it is perfectly sensible 'to assume' that persons possessing 'very large' drug quantities 'intend to distribute' them, the *Mulkern* Court observed that "[t]he difficult question is what is the right amount of drugs a person must possess 'before this presumption of an intent to distribute is appropriate.'" *Id.* (quoting *United States v. Brandon*, 247 F.3d 186, 192 (4th Cir. 2001)). Across the country, the threshold for distinguishing between possession and trafficking varies widely, with the possession of as low as five grams being deemed trafficking in Delaware and as high as one hundred and fifty

9

grams being considered trafficking in Missouri. *Id.* (citing *Brandon*, 247 F.3d at 192). Addressing the Maine threshold of two grams, the First Circuit concluded that, assuming that the possession of some level of heroin could properly give rise to an inference of trafficking, "the crime for which Mulkern stands convicted would not come close to raising this inference." *Id.* at 97. Contrasting the Maine statute with an Eleventh Circuit decision, where the possession of between 200 and 400 grams of cocaine properly gave rise to an inference of distributive intent, the First Circuit described the two gram threshold under Maine law as not "justif[y] an inference of intent to distribute." *Id.* The First Circuit declined to find that Mr. Mulkern's Maine conviction for trafficking in heroin was a "serious drug offense" under the ACCA. *Id.*

**C.  John Oliveira's Cocaine Trafficking Conviction and *Mulkern***

A prior state conviction can serve as a controlled substance offense if it criminalizes (1) the "manufacture, import, export, distribution, or dispensing" of a scheduled drug or (2) the "possession" of a scheduled drug "with intent" to do any of those actions. U.S.S.G. § 4B1.2(b). Maine criminalizes "trafficking" under 17-A M.R.S. § 1103(1-A), and defines "traffick" in six alternative ways:

A. To make, create, manufacture;
B. To grow or cultivate, except for marijuana;
C. To sell, barter, trade, exchange or otherwise furnish for consideration;
D. To possess with the intent to do any act mentioned in paragraph C;
E. To possess 2 grams or more of heroin or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing heroin; or
F. To possess 2 grams or more of fentanyl powder or 90 or more individual bags, folds, packages, envelopes or containers of any kind containing fentanyl powder.

10

17-A M.R.S. § 1101(17). Maine's statute, therefore, is divisible. As a result, the Court may look to the *Shepard* documents to determine which provision the Maine court used to convict Mr. Oliveira.

The Court concludes that Mr. Oliveira was not convicted under subsection (E), heroin, or (F), fentanyl. The May 26, 2009 indictment establishes that the scheduled drug in Mr. Oliveira's case was cocaine, not heroin or fentanyl.[5] *Sentencing Ex.* 1. There are no contrary indications in the J&C or in the docket record. *Sentencing Ex.* 2, 3. None of the documents reveals the actual amount of cocaine in question.

At first, a conviction under subsections (A)-(D) does not appear to raise the same problem the First Circuit confronted in *Mulkern*. The verbs in subsections (A)-(C) are nearly identical to or synonymous with the verbs the Sentencing Commission used to define a controlled substance offense. *Compare* 17-A M.R.S. § 1101(17)(A)-(B) ("make," "create," "manufacture," "grow," "cultivate,") *with* U.S.S.G. § 4B1.2(b) ("manufacture"); *compare* 17-A M.R.S. § 1101(17)(C) ("sell," "barter," "trade," "exchange," "furnish for consideration") *with* U.S.S.G. § 4B1.2(b) ("import," "export," "distribut[e]," "dispens[e]"). Subsection (D), like the second half of guideline § 4B1.2(b), criminalizes the act of possession when coupled with an intent to do one of the listed actions. The least of the conduct criminalized by the relevant state provisions is subsection (D), which requires possession plus intent, but even this

---

[5] As a result, the First Circuit's decision in *Mulkern*, which addressed a conviction for trafficking in heroin, does not directly answer whether Mr. Oliveira's conviction for trafficking in cocaine is a controlled substance offense as defined in the guidelines. *See Mulkern*, 854 F.3d at 97.

conduct closely matches the definition of a controlled substance offense under the guidelines.

### D. "A Permissible Inference"

Another provision of the statute, however, 17-A M.R.S. § 1103(3)(B), complicates this picture. Under that subsection, "[p]roof that the person intentionally or knowingly possesses" fourteen grams or more of cocaine or 4 grams or more of cocaine base "gives rise to a permissible inference under the Maine Rules of Evidence, Rule 303 that the person is unlawfully trafficking in scheduled drugs." *Id.* Rule 303 is entitled "Presumptions in Criminal Cases" and provides:

> **(a) Scope.** This rule governs the application of statutory and common law presumptions, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt in criminal cases.
> **(b) Submission to jury.** The court may not direct a verdict against an accused based on a presumption or statutory provisions that certain facts are prima facie evidence of other facts or of guilt. The court may permit a jury to infer guilt or a fact relevant to guilt based on a statutory or common law presumption or prima facie evidence, if the evidence as a whole supports guilt beyond a reasonable doubt.
> **(c) Instructing the jury.** Whenever the existence of a presumed fact against the accused is submitted to the jury, the court in instructing the jury should avoid charging in terms of a presumption. The charge must include an instruction that the jurors may draw reasonable inferences from facts proved beyond a reasonable doubt and may convict the accused in reliance upon an inference of fact if they conclude that such inference is valid and if the inference convinces them of guilt beyond a reasonable doubt and not otherwise.

M. R. EVID. 303.

Unlike the possession of two grams or more of heroin, Maine law does not designate the mere possession of fourteen grams or more of cocaine to be trafficking. Instead, Maine law provides that the intentional or knowing possession of fourteen

or more grams of cocaine gives rise to a permissible inference that the possession was for trafficking. As a result, the Court faces a situation both similar and dissimilar to the one in *Mulkern*. The provisions the First Circuit addressed in *Mulkern* amount to a conclusive presumption of distributive intent based on a certain level of possession, whereas the provisions here apply a permissive inference.

The first question the Court must answer is whether the difference between a conclusive presumption and a permissive inference instruction demands a different outcome under *Mulkern*. A key lesson from *Mulkern* is that the Court should look carefully at the dividing line between possession and trafficking, and examine how a state's trafficking laws treat proof of the element of distributive intent. *See Childers*, 2017 U.S. Dist. LEXIS 90334 at *1 n.1. It is "perfectly sensible" to infer that a person "possessing 'very large' quantities 'intends to distribute' them," but it is more hazardous to infer distributive intent from possession of smaller quantities. *Mulkern* 854 F.3d at 96 (quoting *United States v. Brandon*, 247 F.3d 186, 192 (4th Cir. 2001)). "Obviously, some defendants possess very small quantities of drugs for the sole purpose of distributing them and some defendants possess significant quantities simply for personal use." *Id.* at 97 (internal quotation marks omitted). As noted earlier, the First Circuit advises that "[t]he difficult question is what is the right amount of drugs a person must possess before this presumption of an intent to distribute is appropriate." *Id.* at 96 (internal quotation marks omitted).

Courts routinely allow juries to make inferences about defendants' mental states based on circumstantial evidence. It is a standard feature of the criminal law

13

for juries to make inferences about a defendant's mens rea because there is often little or no direct evidence of mental states like intentions. In this District, the Court commonly instructs juries that "[Y]ou are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find to have been proven such reasonable inferences as you believe are justified in the light of common sense and personal experience." *3.04 What is Evidence; Inferences*, CHIEF DISTRICT JUDGE NANCY TORRESEN'S 2017 REVISIONS TO PATTERN CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE FIRST CIRCUIT (March 6, 2017), http://www.med.uscourts.gov/pdf/crpjilinks.pdf.

But the model instruction in Maine for presumptions on criminal matters does more than instruct the jury about a generally permissible inference. Although the language is careful, the state judge expressly instructs the jury on the potential impact of the permissible presumption:

> There are certain inferences you may use, but you are not required to use, in evaluating evidence of _____. If you find beyond a reasonable doubt that _____, then you may infer that _____. It is up to you to decide whether to adopt any inference or not. You are not compelled to accept any inference established by law. You may reject an inference if you wish. The ultimate decision is up to you. But you must remember that the burden remains on the State to prove each and every element of the offense beyond a reasonable doubt.

DONALD G. ALEXANDER, MAINE JURY INSTRUCTION MANUAL § 6-13 (4th ed. 2012). In the context of the cocaine charge, if the state judge instructed the jury in accordance with the model instruction, the trial judge would instruct the jury:

> There are certain inferences you may use, but you are not required to use, in evaluating evidence of [the defendant's alleged trafficking in cocaine]. If you find beyond a reasonable doubt that [the defendant intentionally and knowingly possessed 14 or more grams of cocaine],

14

> then you may infer that [he possessed the cocaine to traffick the cocaine]. You are not compelled to accept any inference established by law. You may reject an inference if you wish. The ultimate decision is up to you. But you must remember that the burden remains on the State to prove each and every element of the offense beyond a reasonable doubt.

*Mulkern* presents no obstacle to finding a career offender predicate when a state operates like the federal courts and allows juries to infer distributive intent based on evidence that the defendant possessed quantities exceeding personal use levels. But when a state's laws weigh in on the specific quantity at which juries should make that inference, *Mulkern* suggests the Court should examine whether the quantity the state has chosen falls below the level the Sentencing Commission contemplated.

There is little purpose in a state specifying the quantity at which the jury may infer the intent to traffick from mere possession, other than to suggest to the jury what drug quantity the jury should consider to be an appropriate dividing line between possession and trafficking, something that presumably falls outside the common knowledge of most jurors.

This analysis takes the Court one step beyond *Mulkern* because, unlike the possession of 2 grams of heroin, the possession of 14 grams of cocaine is not an element of the offense of trafficking cocaine. In distinguishing the ACCA definition of "serious drug offense" from "violent felony," the First Circuit in *Mulkern* was careful to observe that statutory language for "serious drug offense" used the phrase, "involving . . . possess[ion] with the intent to distribute," and did not use the phrase, "as an element." *Mulkern*, 854 F.3d at 95-96. The guideline definition of "controlled substance offense" does not speak in terms of elements either:

15

an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). Thus, unlike the ACCA definition of "violent felony," the guideline definition of "controlled substance offense" does not restrict its definition to the elements of the crime.

Guided by *Mulkern*, the Court concludes that Maine's permissive inference instruction for cocaine demands similar treatment to its conclusive presumption for heroin and fentanyl addressed in *Mulkern*. Even with the cautionary language of the Maine Model Jury Instruction on permissible inferences, the trial judge's express instruction to the jury about the significance of the possession of 14 grams or more of cocaine for purposes of its determination as to whether the state has proven trafficking is a powerful suggestion to the jury about the dividing line between possession and trafficking. Nor does it matter that Mr. Oliveira pleaded guilty and was not found guilty by a jury of the trafficking crime. Mr. Oliveira was, no doubt, advised by his counsel that if he went to trial, he would have faced the permissible inference instruction and it must have factored into his decision to plead guilty to the trafficking offense. In analyzing the impact of Maine's 14 gram threshold on the career offender guideline, it makes little difference as a practical matter for the accused person whether the state labels that threshold determination as a permissive evidentiary inference or as a conclusive presumption as part of the definition of the offense.

At least one other circuit reached a similar conclusion on the effect of a state presumption. In *United States v. Danielson*, 199 F.3d 666 (2d Cir. 1999), the Second Circuit addressed the effect of a statutory presumption on the determination of whether a New York conviction qualified as a violent felony predicate under the ACCA. New York criminalized possessing a loaded firearm with intent to use it unlawfully against another. *Id.* at 671. The Second Circuit said "it might seem clear" that this state law qualified as a violent felony, but found "the analysis is complicated" by another provision that made possession of a weapon "presumptive evidence of intent to use the [firearm] unlawfully against another." *Id.* at 671-72. Because it appeared that the New York provisions "might reach conduct that qualifies as a violent felony under the ACCA and conduct that does not," the *Danielson* Court used the jury charge to resolve the ambiguity and concluded that "it does not appear that Danielson was convicted on the basis of 'mere' possession." *Id.* *Danielson* is consistent with the Court's conclusion that statutory presumptions or inferences do impact the analysis under the career offender guidelines.

Later, in *United States v. Lynch*, 518 F.3d 164 (2d Cir. 2008), the Second Circuit considered whether it was necessary to conduct the analysis in *Danielson* when the Defendant pleaded guilty to the crime. The *Lynch* Court concluded that the guilty plea necessarily admitted both elements of the offense, possession and intent, which meant the defendant's conviction was an ACCA predicate despite the New York statutory presumption regarding the intent element. *Id.* at 172-173. This conclusion,

17

however, ignores the reality that defendants and their attorneys are faced with the statutory presumption when making plea decisions.[6]

The First Circuit takes a more practical approach before applying the steep penalties of the career offender guideline enhancement. *See Mulkern* 854 F.3d at 96 ("The difficult question is what is the right amount of drugs a person must possess before this presumption of an intent to distribute is appropriate"). Functionally, it makes little difference how a state determines the quantity where mere possession implies distributive intent. Whether the state sets a lower bar through a statutory inference, presumption, or the definition of the elements of the offense, the result is similar: federal courts cannot be sufficiently confident that the Sentencing Commission would have intended to apply the career offender enhancement to all of those convictions.

The second question the Court must answer is whether the Maine threshold falls below the level at which federal courts are confident inferring distributive intent from possession. Without further caselaw on point, it is doubtful that the First Circuit would view fourteen grams of cocaine as sufficient to infer distributive intent and thereby constitute a controlled substance offense under the guidelines. *See Childers*, 2017 U.S. Dist. LEXIS 90334 at *1 n.1. In *Mulkern*, the Court concluded

---

[6] In *United States v. Madera-Madera*, 333 F.3d 1228 (11th Cir. 2003), the Eleventh Circuit wrote that a tiered statute in Georgia, which provided that possession of 28 or more grams of cocaine amounted to trafficking, "necessarily infers an intent to distribute once a defendant possesses a certain amount of drugs." *Id.* at 1232. However the Georgia statute did not expressly create an inference of trafficking; it provided only that if someone possessed twenty-eight grams or more of cocaine, it would constitute trafficking. *See* O.C.G.A. § 16-13-31(a).

18

that Maine's two gram threshold for heroin and fentanyl would "not come close to raising this inference." *Mulkern* 854 F.3d at 97.

In *Mulkern*, the First Circuit cited *United States v. Brandon*, 247 F.3d 186 (4th Cir. 2001), where the Fourth Circuit wrote:

> What quantity of drugs must be possessed before this presumption of an intent to distribute is appropriate, however, is difficult to answer definitely, as evidenced by the widely varying quantities that states have established as the threshold for a trafficking-by-possession conviction. For example, possession of five grams of cocaine is considered trafficking in Delaware, *see* Del. Code Ann. tit. 16, § 4753A(a)(2); possession of ten grams of cocaine is trafficking in South Carolina, *see* S.C. Code Ann. §§ 44-53-370(e)(2); possession of twenty-eight grams is trafficking in North Carolina, *see* N.C. Gen. Stat. § 90-95(h)(3), but it takes more than one hundred and fifty grams to be guilty of trafficking in Missouri, *see* Mo. Ann. Stat. § 195.223.2.

*Mulkern*, 854 F.3d at 97 (citing *Brandon* at 191). Maine's dividing line between possession and trafficking is now the second lowest[7] among the laws of the states the Fourth Circuit discussed in *Brandon*, thus raising the specter that troubled the First Circuit in *Mulkern* of markedly inconsistent sentences under federal law for the same conduct depending on the fortuity of what state law applied to a defendant's prior

---

[7] In 2011, Delaware repealed this statute and replaced it with a different statutory scheme. *See* 78 *Del. Laws*, c. 13, § 39 (2011). The scheme is complicated and allows for consideration of aggravating factors. In general, possession of 5 grams or more of cocaine subjects a person to the Class F Felony of aggravated possession. 16 Del. C. § 4756 ("Aggravated Possession"); § 4751C(5)(a). If a person possesses 10 grams or more, the crime is aggravated possession, a Class E Felony. *Id.* § 4755 ("Aggravated Possession"), § 4751C(4)(a). If a person possesses 15 grams or more, the crime is "drug dealing, aggravated possession", a Class D Felony. *Id.* § 4754, § 4751C(3)(a). If a person possesses 20 or more grams, the crime is "drug dealing, aggravated possession", a Class C Felony. *Id.* § 4753, § 4751C(2)(a). If a person possesses 25 grams or more, the crime is "drug dealing, aggravated possession", a Class B Felony. *Id.* § 4752, § 4751C(1)(a). Without an aggravating factor, the current dividing line between a possession offense and a drug trafficking offense in Delaware is 15 grams of more of cocaine. With the change in Delaware law, Maine's threshold of 14 grams of cocaine for the inference of trafficking is now the second lowest among the states the Fourth Circuit cited in *Brandon*.

drug trafficking conviction. *Id.* at 96 (discussing the need to avoid "inconsistencies in punishment").

Accordingly, because the Court concludes that Maine's fourteen-gram threshold is too low to be confident that Mr. Oliveira had the requisite distributive intent, his conviction is not a controlled substance offense under the guidelines.

## IV.   CONCLUSION

Because the Court concludes that Mr. Oliveira's cocaine trafficking conviction under Maine law is not a controlled substance offense, he is not subject to the enhanced guideline imprisonment range under the career offender guidelines. The Court will schedule this matter for a further presentence conference.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of December, 2017